UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

N.L., individually and on behalf of C.L., a child
With a disability,
                    *Plaintiff,*

-against-

SPRINGBORO COMMUNITY CITY SCHOOL DISTRICT
                    *Defendant,*

COMPLAINT

Case No.

N.L., individually and on behalf of C.L, a child with a disability, by and through her attorneys, Cuddy Law Firm, PLLC, for her complaint hereby alleges:

1. This is an action brought pursuant to the pendency provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C § 1415(j) and its implementing regulations, 34 C.F.R. § 300.518 and O.A.C. § 3301-51-05 (Ohio's implementing regulations).

2. Plaintiff N.L. and C.L. reside in Springboro, Ohio.

3. C.L. is a child with a disability as defined by 20 U.S.C. §1401(3)(A).

4. Plaintiff N.L. is the parent of C.L. as defined by IDEA 20 U.S.C. § 1401(23)

5. Defendant Springboro Community City School District is a local education agency as defined by IDEA, 20 U.S.C. § 1401(19), and, as such, is obligated to provide educational and related programs and services to its students in

1

compliance with the applicable federal and state statutes, regulations, and the U.S. Constitution, and is subject to the requirements of 20 U.S.C. § 1400 *et seq.*, and the regulations promulgated thereunder.

## JURISDICTION AND VENUE

6. Jurisdiction is predicated upon 28 U.S.C. §1331, which provides the district courts with original jurisdiction over all civil actions arising under the laws of the United States, and upon the jurisdictional provisions of IDEA, 20 U.S.C. 1415(i)(3), which provides that the district courts of the United States shall have jurisdiction of actions brought under section 1415(i)(3) without regard to the amount in controversy.

7. 7. Venue is predicated upon 28 U.S.C. § 1391(b)(1) based upon the residence of the defendant, and upon 28 U.S.C. §1391(b)(2) based upon the location of the subject matter of this action.

## FACTUAL BACKGROUND

8. C.L. was born in 2011 and is classified as a student with Emotional Disturbance.

9. C.L. began the 2018-2019 school year attending the second grade at defendant's Dennis Elementary School, a public school.

10. Defendant developed C.L.'s initial Individualized Education Program (IEP) on May 3, 2018.

11. The Initial IEP mandates that C.L. will receive primary instruction the co-taught classroom.

12. The Initial IEP mandates that C.L. receive special-designed instruction for behavior, including behavior support daily.

2

13. The Initial IEP mandates that C.L. will be provided small group or 1:1 instruction, as he requires significant supports and opportunities to acquire and demonstrate his understanding of concepts.

14. According to the initial IEP, C.L. is to attend lunch, recess, and all specials (art, music, technology, and Physical Education) with his typical peers.

15. The initial IEP mandated that C.L. receive occupational therapy in a designated therapy area in order to minimize distractions, focus on specific skill development, and access specialized tools.

16. C.L. attended a co-taught classroom in the public school from the development of his initial IEP (5/3/18) until November 19, 2018, when defendant unilaterally changed his placement to home instruction.

17. On November 15, 2018, the District "emergency removed" C.L. from school and suspended him for four days.

18. On November 19, 2018, the District held a manifestation determination review.

19. On November 19, 2018, defendant told N.L. that they wished to change C.L.'s permanent placement to the Emotionally Disturbed unit at the Warren County Educational Service Center (WCESC), and that if N.L. did not agree; they would file due process against her.

20. No IEP meeting was held between N.L. and defendant to change the IEP in any way, including changing C.L.'s placement.

21. When N.L. indicated that she would not agree to this permanent change in placement, defendant told her that it would set up home instruction, barring him from his educational placement.

22. C.L. did not attend home instruction, as defendant placed conditions on his attendance that essentially prevented him from attending.

23. On November 19, 2018, defendant filed a due process complaint, in accordance with 20 U.S.C. 1415(k)(3), against N.L., based on her refusal to consent to a change in C.L.'s educational placement.

24. The Impartial Hearing Officer did not address any stay-put issues when the District's due process complaint against N.L. was filed.

25. In February 2019, defendant unilaterally changed C.L.'s placement to Cincinnati Center for Autism (CCA), without written consent from N.L.

26. Since defendant unilaterally changed C.L.'s placement to CCA, he has attended there for two hours per week, on Thursdays.

27. On April 12, 2019, N.L., through counsel, filed a motion with the Impartial Hearing Officer seeking that the Student's pendency placement be established in the co-taught classroom, where he was placed when the defendant filed its due process complaint.

28. On April 23, 2019, defendant filed a response to the motion for stay-put.

29. On April 23, 2019, the Impartial Hearing Officer erred in ordering that C.L.'s stay-put placement would be at CCA part-time, until a full-time placement was available.

THE IDEA'S PENDENCY PROVISION

30. The process for determining a student's placement is outlined in 34 C.F.R. § 300.116(a)(1), which states:

(a) The placement decision—

(1) Is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; and (2) Is made in conformity with the LRE provisions of this subpart

31. Additionally, the Ohio Administrative Code provides an additional requirement that the parent must provide written, informed consent before any change in placement may occur. Specifically OAC 3301-51-05(C)(5) states:

(5) Parental consent for a change of placement
(a) A "change of placement" means a change from one option on the continuum of alternative placements to another.
(b) Informed parental consent must be obtained before making a change of placement of a child with a disability.
(c) Informed parental consent need not be obtained before:
    (i) A change of placement if the school district of residence can demonstrate that it has made reasonable efforts, as described in rule 3301-51-07 of the Administrative Code, to obtain consent, and the child's parent has failed to respond.
    (ii) A change of placement of a child with a disability that is the result of a disciplinary action taken in accordance with paragraph (K)(20) of this rule.
    (iii) Reviewing existing data as part of an evaluation or a reevaluation; or
    (iv) Administering a test or other evaluation that is administered to all children unless, before administration of that test or evaluation, consent is required of parents of all children.

32. The IDEA includes a "pendency" or "stay-put" provision:

Maintenance of current educational placement
Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).

33. Subsection 1415(k)(4) involves appeals from disciplinary decisions involving placement in an interim alternative educational setting (IAES) or the outcome of a manifestation review determination (MDR) under 20 U.S.C. § 1415(k).

34. The underlying due process complaint in this matter does not invoke 1415(k).

35. Thus, the IDEA's pendency provision "requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete[.]" *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

36. Additionally, the Student had never attended the full-day program at CCA prior to the District filing its due process complaint.

37. The Parent has not agreed to any placement other than the co-taught classroom at Dennis Elementary School, the placement agreed upon in his IEP.

38. The District's due process complaint is seeking a change in placement, but the Impartial Hearing Officer's stay-put order essentially changes the placement without parental consent and without a final decision on the merits.

39. Using any placement besides the co-taught classroom would result in absurdity because, "it is logically dubious to stay in a school that you have never attended." *N.W. ex rel. J.W. v. Boone Cty. Bd. of Educ.*, 763 F.3d 611, 618 (6th Cir. 2014).

EXHAUSTION OF ADMINISTRATIVE REMEDIES

40. Ordinarily, before an aggrieved individual may bring an action in state or federal court for a violation of the IDEA, he or she must seek recourse from the administrative procedures established by statute. 20 U.S.C. § 1415(i)(2).

41. On April 24, 2019, Bernadette Laughlin of the Ohio Department of Education stated, "the ODE does not hear interlocutory appeals, only appeals of final decisions. See OAC 3301-51-05(K)(14). There is no right to a state level review from an IHO's interlocutory orders." Attempting to have this appeal heard through the State Review Officer would be futile.

42. Exhaustion of administrative remedies, however, is not required to enforce the IDEA's statutory injunction pursuant to 20 U.S.C. §1415(j).

### First Cause of Action

43. Plaintiffs repeats and realleges paragraphs 1 through 33 as if more fully set forth herein.

44. Plaintiffs seek a declaratory order providing that the co-taught classroom setting, in Dennis Elementary School, is C.L.'s current educational placement as of May 3, 2018.

45. As the defendant has filed due process seeking to change C.L.'s placement over the Parent's objection, the co-taught classroom placement, with supports and services as outlined in the initial IEP is the "last agreed-upon placement" and is thus C.L.'s "then-current educational placement and his pendency placement.

Wherefore, plaintiffs respectfully request that this Court:

(1) Assume jurisdiction over this action;

(2) Schedule a prompt hearing on the Plaintiff's emergency relief requested.

(3) Grant an emergency stay of the IHO's stay-put order, which unilaterally changed the Student's placement to CCA.

(4) Grant an emergency injunction allowing the Student to remain in his current educational placement at Dennis Elementary, pending the outcome of the administrative hearings.

Respectfully submitted,

MICHAEL L. EISNER (#0065593)
MARTIN J. KRAFT (#0083965)
ELK & ELK CO., LTD.
6105 Parkland Blvd., Ste. 200
Mayfield Hts. OH 44124
Phone: 440-442-6677
Fax: 440-442-7944
E-mail: meisner@elkandelk.com
*Attorneys for Plaintiff*