# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| N.L., individually and on behalf of C.L. a child with a disability, | : : | Case No. 1:19-cv-334 |
| | : | Judge Timothy S. Black |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| SPRINGBORO COMMUNITY CITY SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

## ORDER

This civil action is before the Court on Plaintiff's motion for emergency statutory injunction (Doc. 2) and Defendant's opposition memorandum. (Doc. 13). Pursuant to Local Rule 65.1, the Court held a conference with the parties regarding Plaintiff's motion for injunctive relief on May 17, 2019. As agreed to by the parties, the motion is now ripe for review. (*See* May 17, 2019 Minute Entry and Notation Order).

## I.     BACKGROUND

The case arises under 20 U.S.C. § 1415(j), the pendency provision of the Individuals with Disabilities Education Act ("IDEA"). Plaintiff N.L. brings this action on behalf of her child C.L. C.L. has been diagnosed with autism spectrum disorder and is a child with a disability as defined by 20 U.S.C. § 1401(3)(A). (Doc. 1 ¶¶ 1–3).

C.L. began school at Dennis Elementary School, a public school of Defendant Springboro Community City School District ("Defendant" or the "District"), as a first grader in the 2017–18 school year. In the spring of that school year, C.L. displayed

behavioral issues, including kicking, hitting, and punching staff members; destroying and throwing school property and furniture; hitting his head against staff members and walls; striking himself; leaving school grounds; and verbally threatening to cause harm to himself and staff members. (Doc. 11-6 ¶ 7). On more than one occasion, other students had to be evacuated from the classroom for safety purposes due to C.L.'s behavior. (*Id.*)

In response to these behavioral issues, the District developed C.L.'s individualized education plan ("IEP") on May 3, 2018. (Doc. 2-2 ¶ 7). The IEP mandates that C.L. receive primary instruction in a co-taught classroom; receive specially-designed instruction for behavior; be provided small group, 1:1 instruction; attend lunch, recess, and all specials (art, technology, and physical education) with his typical peers; and receive occupational therapy in a designated therapy area. (*Id.* ¶¶ 8–12).

C.L.'s behavior issues continued when he began the second grade in the 2018–19 school year. The school documented C.L.'s incidences beginning in August 2018 that included: regularly leaving the school building; kicking and punching staff members, throwing objects in the classroom and at staff members; threatening a staff member with a large piece of wood and telling the staff member that he was going to hurt him and kill him; standing on desks, tables, and other furniture; and hitting his head against a window. (Doc. 11-6 ¶ 8(a)–(n)). On November 14, 2018, C.L. had a behavioral incident that included throwing chairs at staff members, standing on top of a desk, running out of the school building multiple times, and striking himself in his jaw. After this incident, C.L. was removed from the school and suspended for four days. (*Id.* ¶8(o)).

On November 19, 2018, the District's IEP team met with N.L. to discuss a change in C.L.'s educational placement, but N.L. did not agree with the District's recommendations. N.L. expressed that she did not believe C.L.'s Behavior Plan and IEP were implemented appropriately, and stated that changes to his current services, given his recent autism diagnosis, and in collaboration with his medical team could be provided at Dennis Elementary in the least restrictive environment. (Doc. 11-4).

Thereafter, the District filed a due process complaint with the State of Ohio Department of Education (Case No. SE 3703-2018), which is still pending, seeking to remove C.L. from Dennis Elementary and place him in an alternate more restrictive placement for no less than 45 days because the District believed that the current placement "will likely result in injury to [C.L.] and others." (Doc. 11-6). N.L. filed a response to the District's complaint and a counterclaim that the District's actions denied C.L. a free appropriate public education ("FAPE") and violated the IDEA. (Doc. 11-7).

After filing the due process complaint, Plaintiff states that the "District unilaterally barred [C.L.] from the public school system, and also unilaterally determined that he would be served for five hours per week in the home setting by a tutor." (Doc. 2-1 at 2). Plaintiff contends that beginning in February 2019, the District again unilaterally changed C.L.'s placement by contracting with the Cincinnati Center for Autism School ("CCA"). However, email communications between the District's counsel and Plaintiff's former counsel show that for several months the District and Plaintiff communicated to find the proper placement for C.L.

Although it does not appear the parties ever formally executed an agreement, on January 29, 2019, Plaintiff's former counsel emailed the District's counsel that "[u]nless we hear otherwise from you, we are moving forward with the understanding that [C.L.] will attend CCA this coming Thursday (1/31) from 12:30-2:30 and that the District will arrange transportation[.]" (Doc. 11-8 at 19). C.L. has attended CCA since February 2019, and the District has provided transportation for him. (*Id.* at 21–23; Doc. 2-2 ¶ 19). Plaintiff states that she "fully cooperated with the District; however, [N.L.] did not agree to change C.L.'s placement from his least restrictive environment in the District." (Doc. 2-1 at 2).

In April, Plaintiff filed a due process complaint against the District and a request for an impartial hearing seeking that C.L.'s pendency placement be in a co-taught classroom at Dennis Elementary. (Doc. 11-9). Notably, Plaintiff's complaint specifically sought "full time placement at a separate facility specifically dedicated to teaching students with autism (such as Cincinnati Center for Autism) . . .." (*Id.* at 8). The District opposed Plaintiff's motion. On April 23, 2019 the Impartial Hearing Officer ("IHO") denied Plaintiff's request that C.L. be placed at Dennis Elementary while the due process proceedings were pending. The IHO entered an order that C.L. be placed at CCA for his interim alternative education setting. (Doc. 11-11). The IHO's order specifically noted that placement at CCA was suggested by Plaintiff in her due process complaint. (*Id.*) In order to address the issue of compensatory education, the IHO determined that C.L.'s interim alternative education setting placement should include the summer session. (*Id.*)

After the IHO denied the request to have C.L. placed at Dennis Elementary while the due process proceedings were pending, Plaintiff filed this action and the current emergency motion for statutory injunction.

## II.    STANDARD OF REVIEW

Courts generally consider four factors in determining whether injunctive relief is appropriate: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id.* These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997).

However, the IDEA includes a "stay-put provision" that states "during the pendency of any proceedings conducted pursuant to this section, unless the State or local education agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The stay-put provision "functions, in essence, as an automatic preliminary injunction." *Drinker by Drinker v. Colonial Sch. Dist.,* 78 F.3d 859, 864 (3d Cir. 1996). Therefore, in order to invoke the stay-put provision, the moving party must show that "(1) proceedings under the IDEA are pending; and (2) prevention of a change in the 'then-current educational placement' of the child is sought." *D.C. v. Oliver*, 991 F. Supp. 2d 209, 213 (D.D.C. 2013) (citing § 1415(j)).

The Supreme Court has found that, while the stay-put provision "effectively creates a presumption in favor of the child's current educational placement[,]" school officials can overcome that presumption "by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Honig v. Doe*, 484 U.S. 305, 328 (1988). In *Honig*, the Court emphasized that the stay-put provision does not "operate[] to limit the equitable powers of district courts such that they cannot, in appropriate cases, temporarily enjoin a dangerous disabled child from attending school." *Id.* at 327. Ultimately, "[i]n any suit brought by parents seeking injunctive relief for violation of [the stay-put provision], the burden rests with the school district to demonstrate that the educational status quo must be altered. *Id.* at 328 n.10.

## III. ANALYSIS

Plaintiff seeks an emergency stay of the IHO's stay-put order (Doc. 11-11) and an emergency injunction allowing C.L. to remain in his current educational placement at Dennis Elementary School. Here, the first factor in the stay put analysis clearly is met because proceedings under the IDEA are pending. Therefore, the Court must determine whether a prevention of a change in the "then-current educational placement" of the child is sought. Plaintiff contends that she never agreed to any placement other than Dennis Elementary School and therefore the stay-put provision's automatic injunctive relief is appropriate.

The District argues that, while no formal change has been made to the IEP, N.L.

has in fact agreed to C.L. attending CCA because it is the only educational experience he

has had since November 2018, was consented to by N.L. through her prior counsel, and

was proposed by N.L. as the placement location for C.L. in her due process complaint.

(Docs. 11-8, 11-9).  The Court finds that, while this evidence demonstrates that Plaintiff

may believe that CCA is a preferable option for C.L.'s education, especially in

comparison to limited-in-home tutoring, these facts do not demonstrate that there was an

"agreement" between N.L. and the school for the purposes of the stay-put provision.

Ultimately, the Court finds that Plaintiff has demonstrated that the two factors required to

invoke the stay-put analysis applies.  Nevertheless, the Court does factor Plaintiff's

indication that CCA is a preferred placement location into its equitable analysis.

Although the stay-put provision applies, the Court finds that the District has met

its burden to show that "maintaining [C.L. at Dennis Elementary School] is substantially

likely to result in injury either to himself or herself, or to others."  *Honig v. Doe*, 484 U.S.

305, 328 (1988).[1]  The evidence presented to the Court demonstrates that C.L.'s

behavioral issues discussed *supra* raise serious concerns regarding the safety of C.L., the

District staff members, and potentially other students.  Therefore, the Court finds that a

---

[1] The Court also finds persuasive Defendant's argument that it has in fact complied with IDEA because 20 U.S.C. § 1415(3) provides that when a parent disagrees with a school district determination that "the current placement of the child is substantially likely to result in injury to the child or to others," the parent may request a hearing with an officer.  § 1415(3)(a).  N.L. did request such a hearing.  The IHO determined that a change in the placement of C.L. was necessary and changed C.L.'s placement to CCA, which the IHO determined was "an appropriate interim alternative educational setting."  § 1415(3)(B)(ii)(II).  The section provides that when an appeal is taken under paragraph 3 "the child shall remain in the interim alternative educational setting pending the decision of the hearing officer."  § 1415(4)(A).

statutory injunction under the stay-put provision is inappropriate here.

Importantly, the Court finds that both N.L. and the District are acting in the best interest of C.L.  As an essential purpose of the stay-put provision is to provide students with disabilities a stable learning environment, the Court takes solace in the fact that C.L. has attended CCA since February 2019 and N.L. has professed that CCA is a suitable learning environment for C.L.

## IV.    CONCLUSION

For these reasons, Plaintiff's motion for emergency statutory injunction (Doc. 2) is **DENIED.**

**IT IS SO ORDERED.**

Date:  5/26/2019                                    *s/ Timothy S. Black*
                                                    Timothy S. Black
                                                    United States District Judge